UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CBF INDÚSTRIA DE GUSA S/A, et al.,

     Plaintiffs,

v.                                                                                  Civil Action No.: 14 cv 3034 (RWS)

STEEL BASE TRADE AG, et al.,

     Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Admitted Pro Hac Vice:

Kevin P. Lucas, Esquire
Bruce A. Americus, Esquire
Alexandra P. West, Esquire
Buchanan Ingersoll & Rooney, PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA  15219
T 412 562-8800
F 412 562-1041

Stuart P. Slotnick, Esquire
Buchanan Ingersoll & Rooney, PC
1290 Avenue of the Americas, 30th Floor
New York, NY  10104-3001
T 212 440 4400
F 212 440 4401

For AMCI Holdings, Inc., American Metals & Coal International, Inc., K-M Investment Corporation, Prime Carbon GmbH, Primetrade, Inc., Hans Mende, and Fritz Kundrun

Dated:  October 6, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ii

I. Plaintiffs Effectively Concede SBT's Lack of Capacity to Be Sued. ........................1

II. Plaintiffs' Assertions of Service Ignore SBT's Conceded Lack of Capacity. ...........1

III. There Is Neither Legal Nor Factual Basis for Judicial Estoppel. .............................1

    A. This Court Did Not Adopt Any Position That Confirmation Was Possible. .2

    B. Existing Defendants Have Been Entirely Consistent in Their Positions. ......3

IV. No Estoppel Arises From SBT's ICC Arbitration Statements. .................................7

V. SBT Is Not Subject to Personal Jurisdiction in this District. ....................................7

    A. Personal Jurisdiction Cannot Be Based Upon an Alter Ego Determination. .7

    B. There Is No Alter Ego Relationship upon Which to Base Jurisdiction. ........9

VI. Plaintiffs Cannot Amend Their Complaint by Declaration. ....................................10

## **TABLE OF AUTHORITIES**

Pages

**Cases**

*Daimler AG v. Bauman*, 134 S. Ct. 746 (Jan. 14, 2014) ........................................................ 9, 10

*DeRosa v. National Envelope Corp.,* 595 F.3d 99 (2d Cir. 2010) ............................................... 2

*Frontenac Int'l, S.A., v. Global Mrkt'g Sys.*, Civ. A. No. RDB-13-00122, 2013 WL
        2896896 (D. Md. June 11, 2013) ...................................................................................... 8

*Glencore AG v. Bharat Alum. Co.*, No. 10 Civ. 5251(SAS), 2010 WL 4323264
        (S.D.N.Y. Nov. 1, 2010) ........................................................................................ 8, 9, 10

*In re Hilsen*, 405 B.R. 49 (Bankr. E.D.N.Y. 2009) ...................................................................... 2

*Mitchell v. Washington Cent. Sch. Dist.*, 190 F.3d 1 (2d Cir. 1999) ...................................... 2, 4

*Orion Shp'g & Trd'g Co. v. Eastern States Petroleum Co.*, 312 F.2d 299 (2d Cir.
        1963) ................................................................................................................................ 8

*Soroof Trd'g Dev. Co. v. GE Fuel Cell Sys.*, 842 F. Supp. 2d 502 (S.D.N.Y. 2012) .................. 4

I.      **Plaintiffs Effectively Concede SBT's Lack of Capacity to Be Sued.**

Nowhere do Plaintiffs argue that SBT[1] has capacity to be sued under applicable law.[2] Their silence on this issue is deafening, and disposes of the sole claim asserted in this action.

II.     **Plaintiffs' Assertions of Service Ignore SBT's Conceded Lack of Capacity.**

Plaintiffs' service arguments ignore the fact that SBT concededly lacks capacity to act, and thus cannot have accepted service, whether through alleged former alter egos or otherwise.

III.    **There Is Neither Legal Nor Factual Basis for Judicial Estoppel.**

Recognizing that SBT's lack of capacity is fatal to their confirmation claim, Plaintiffs resort to arguing that Existing Defendants are judicially estopped to assert it by allegedly having misled this Court in their 2013 briefing as to SBT's Commercial Register listing and the possibility of confirmation.  This is a red herring; not only did Existing Defendants never assert that confirmation was possible, but this Court was informed of SBT's deletion from the Commercial Register at the October 30, 2013 oral argument well prior to this Court's April 9, 2014 disposition on the Motion to Dismiss.  Plaintiffs had full opportunity at the oral argument to alert the Court to the significance in their view of the deletion.  Moreover, they had an additional opportunity during the six months thereafter but made the tactical decision not to request leave to do so.  Regardless, this Court never stated (and was not in a position to state because the parties had not placed at issue) that Plaintiffs could confirm in Switzerland, just that it was unlikely that they could do so here.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Defendants' Memorandum in Support of Motion to Dismiss.

[2] Indeed, Plaintiffs essentially concede SBT's lack of capacity, arguing that the impossibility of confirmation excuses them from obtaining it.  (EA ECF #79, at 22-26).

Plaintiffs concede that judicial estoppel law requires them to show that Existing Defendants: (1) have taken "clearly inconsistent" factual positions; and (2) persuaded the Court to adopt their earlier position.  ECF #41, at 16; *accord DeRosa v. Nat'l Env. Corp.,* 595 F.3d 99, 103 (2d Cir. 2010) ("Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.").  "[J]udicial estoppel does not apply when the first statement resulted from 'a good faith mistake or unintentional error.'" *In re Hilsen*, 405 B.R. 49, 64 (Bankr. E.D.N.Y. 2009) (quoting *Mitchell v. Wash. Cent. Sch. Dist.*, 190 F.3d 1, 6 n.2 (2d Cir. 1999)).  Judicial estoppel is limited "to situations where the risk of inconsistent results with its impact on judicial integrity is certain."  *DeRosa,* 595 F.3d at 103.

### A.     This Court Did Not Adopt Any Position That Confirmation Was Possible.

Existing Defendants respectfully assert that this Court's April 9, 2014 Order did not adopt or rely on any representation, real or imagined, by Existing Defendants that Plaintiffs would be able to confirm the ICC Award.  To the contrary, this Court held that "Plaintiffs' enforcement action **may** be permissible **if** the Award was confirmed in Switzerland or other court of competent jurisdiction."  (EA ECF #46, at 37).  This holding in no way assumes that confirmation will be possible, and indeed, speaks only in terms of what "may" happen "if" the Award were to be confirmed.  Thus, this Court appears to have correctly adopted Existing Defendants' argument that confirmation is required, whether it is possible or not.

Moreover, to the extent that Plaintiffs assert that this Court's holding relied on SBT's Commercial Register status, although the significance of this status was never put at issue by either party, Plaintiffs' counsel informed this Court of SBT's deletion at the October 30, 2013

2

oral argument on Existing Defendants' Motion to Dismiss.  Once again, Plaintiffs made the tactical decision not to raise the significance of this deletion, despite having six months to do so prior to the issuance of this Court's April 9, 2014 Opinion, raising the issue only after they lost.

Accordingly, while Existing Defendants indisputably "succeeded in persuading" this Court correctly to accept their position that confirmation was required, they in no way "succeeded in persuading [the] Court to accept [an] earlier position" that confirmation was possible, a position that they never took and on which this Court did not rely or rule.  (ECF #41, at 16).

Plaintiffs assert that this Court adopted alleged assertions by Existing Defendants in arguing for forum non conveniens dismissal to the effect that Plaintiffs could bring **enforcement** claims in Switzerland, but not only did Existing Defendants state the exact opposite, but Plaintiffs also stated that Switzerland would not permit enforcement against alter egos (EA ECF #38, at 3), and this Court acknowledged Plaintiffs' position, (EA ECF #46, at 36).  At any rate, this Court was not persuaded by any imaginary position of Existing Defendants to the contrary and, indeed, did not reach or decide the issue of forum non conveniens.  (EA ECF #46, at 40).

**B.   Existing Defendants Have Been Entirely Consistent in Their Positions.**

Plaintiffs' judicial estoppel argument is a house of cards built upon a false premise.  Their assertion that Existing Defendants previously misrepresented to the Court in support of their July 30, 2013 Motion to Dismiss that confirmation was possible despite SBT's subsequent September 30, 2013, deletion has no basis in fact.  Existing Defendants argued, correctly, that confirmation was a condition precedent to Plaintiffs' enforcement claims.  (EA ECF #18, at 24-26; EA ECF #43, at 10-15).  Contrary to Plaintiffs' fundamental argument, however, Existing Defendants

3

never asserted that confirmation was possible under the circumstances presented.[3] Indeed, nowhere in Existing Defendants' argument for dismissal based upon the necessity of confirmation did they even point to SBT's continued Commercial Register listing.[4] (EA ECF #18, 24-27; EA ECF #43, at 10-15).

Far from representing that confirmation was available, the only position that Existing Defendants took with respect to the viability of any confirmation action was their specific assertion that any attempt to confirm in this District was **futile** due to the lack of personal jurisdiction over SBT. (EA ECF #18, at 26 n.11). In making this argument, Existing Defendants noted that SBT's then "in liquidation" status, which is undisputed, ended any prior alter ego relationship that might otherwise have formed the basis for personal jurisdiction. *See id.*

This argument would, if anything, have been strengthened by SBT's subsequent deletion from the Commercial Register, had Existing Defendants learned of it prior to filing their Reply Brief in Support of Motion to Dismiss. In fact, Existing Defendants did not learn of it until after filing their Reply.[5] Accordingly, in the Reply, they continued to argue only that the bankruptcy

---

[3] The viability of a confirmation claim is a question of law, not of fact, and would not support judicial estoppel in any event. *See Mitchell*, 190 F.3d at 6 (judicial estoppel requires inconsistent "factual positions"); *Soroof Trd'g Dev. Co. v. GE Fuel Cell Sys.*, 842 F. Supp. 2d 502 (S.D.N.Y. 2012) (no judicial estoppel where "the disputed representation was one of law rather than fact").

[4] The only time in this entire litigation that Existing Defendants even mentioned SBT's Commercial Register listing was in the Statement of Facts in their July 31, 2013 Brief in Support of Motion to Dismiss, where they correctly stated without any elaboration or emphasis, "On January 27, 2012, the SBT Bankruptcy was closed. SBT is still listed in the Swiss Commercial Register as a company in liquidation." (EA ECF #18, at 15). This statement of fact, supported by the Declaration of Dr. Andreas Rüd attaching a July 19, 2013 Register excerpt, was true when made and never mentioned again. (*Id.*; EA ECF #22 ¶ 16; EA ECF #22-3, at A00047-A00048).

[5] Any hypothetical confirmation claims belonged to Plaintiffs, and it was their obligation to monitor those claims, not Existing Defendants'. It is a bit much for Plaintiffs, who failed to do anything for almost **two years**, to cast aspersions on Existing Defendants for failing immediately

of "SBT, a Swiss company in liquidation" ended any alter ego status that might otherwise have supported personal jurisdiction in this District. (EA ECF #43, at 11 n.8). The passing continued reference to SBT as a "Swiss company in liquidation" simply cannot be tortured into a misrepresentation regarding the viability of a confirmation action.[6] *Id.* Moreover, arguing that confirmation would be **unavailable** in the SDNY is not a representation as to availability elsewhere.

Equally specious is Plaintiffs' assertion that by arguing for dismissal of the **enforcement** claims **against Existing Defendants** on the basis of forum non conveniens, Existing Defendants somehow represented that **confirmation against SBT** could be obtained. Clearly, any representations Existing Defendants made as to the adequacy of a Swiss forum were with respect to the subject matter of the enforcement and fraud claims asserted against Existing Defendants in the Enforcement Action, and not as to any hypothetical confirmation claim against SBT.

Moreover, in arguing for forum non conveniens dismissal, Existing Defendants repeatedly explained that a forum was adequate "if it permits litigation of the subject matter of the dispute," and that adequacy "does **not** depend on the existence of the **identical** cause of action in the other forum, nor on identical remedies." (EA ECF #18, at 39-40 (emphasis added);

---

to learn of SBT's deletion and, in the short period before oral argument, to determine its significance under Swiss law, or the difficulties it might pose **for Plaintiffs**.

[6] Equally meritless is Plaintiffs' implication that the Supplemental Declaration of Andreas Rüd (the "Supplemental Declaration") executed on October 6, 2013, misrepresented the viability of a confirmation claim. The Supplemental Rüd Declaration addressed two limited issues: it attached certain ICC Arbitration documents and it addressed the Certificates of Loss filed in the SBT Bankruptcy. (EA ECF #44). Neither has anything to do with SBT's status or the continued possibility of a confirmation claim. Dr. Rüd did not reference the Commercial Register in his Supplemental Declaration, and SBT's listing was irrelevant to the issues covered therein. In fact, Dr. Rüd did not learn that SBT had been deleted six days before his Supplemental Declaration relating to a different subject matter was signed until after that Declaration was filed.

*accord* EA ECF #60, at 40-41).  Existing Defendants cited cases holding Switzerland to be an adequate forum for fraud, misrepresentation and breach of fiduciary duty claims in the corporate context.  (EA ECF #18, at 40).  They also explained that "[S]wiss law allows for piercing the corporate veil in appropriate circumstances . . . and thus provides a forum in which Plaintiffs allegations of alter ego and successor liability can be resolved, " and that it recognized "causes of action relating to fraudulent transfer, fraud and aiding and abetting fraudulent conduct."  *Id.*

In a footnote, Existing Defendants noted that Switzerland is a signatory to the New York Convention and permits litigation to enforce arbitration awards thereunder, but far from representing that Plaintiffs' specific claim to enforce the ICC Award against Existing Defendants was viable in Switzerland (much less representing anything about a hypothetical confirmation claim against SBT which was not part of the subject matter of the dispute between Plaintiffs and Existing Defendants), Existing Defendants expressly acknowledged that Plaintiffs would not be able to enforce the ICC Award against them in Switzerland, just as, indeed, they asserted, and respectfully continue to assert, that it cannot be enforced against them here.  (EA ECF #18, at 40 nn. 14-15; EA ECF #43, at 18 (explaining that Plaintiffs' inability to enforce the ICC Award in Switzerland does not make Switzerland a less adequate forum than the United States, and further that even if enforcement were available here and not in Switzerland, this would not make Switzerland inadequate given the availability of other causes of action such as those asserted in Plaintiffs' Swiss Action).  Thus, far from representing that Plaintiffs' **confirmation** claim against SBT was viable in Switzerland, Existing Defendants acknowledged that even Plaintiffs' **enforcement** claim against them might not be viable in Switzerland, but argued that this did not preclude Switzerland from being an equally adequate forum.

6

In sum, Existing Defendants have never taken the position that Plaintiffs would be able to prevail on a confirmation claim against SBT. Their positions that confirmation is a required prerequisite to enforcement and that the subject matter of the dispute between Plaintiffs and Existing Defendants is most appropriately litigated in Switzerland are both entirely consistent with their position that SBT presently lacks capacity to be sued. These positions are not inconsistent at all, much less "clearly inconsistent" as required to establish judicial estoppel. (ECF #41, at 16). Thus Plaintiffs have failed to establish either prong of the judicial estoppel inquiry, and their attempt to estop Existing Defendants from drawing this Court's attention to SBT's conceded lack of capacity to be sued fails.

### IV.  No Estoppel Arises from SBT's ICC Arbitration Statements.

Plaintiffs' assertion that Defendants are equitably and judicially estopped from asserting SBT's lack of capacity as a result of extension requests and alleged representations by SBT that it would participate in ICC Arbitration is equally meritless, as an impermissible collateral attack on the ICC Award and for all the reasons stated in the Reply Memorandum of Law in Support of Motion to Dismiss Amended Complaint contemporaneously filed in the Enforcement Action ("Enforcement Reply"), which is incorporated by reference herein.

### V.  SBT Is Not Subject to Personal Jurisdiction in this District.

#### A.  Personal Jurisdiction Cannot Be Based Upon an Alter Ego Determination.

Plaintiffs attempt to foreclose this Court's consideration of the dispositive issue of whether personal jurisdiction in a **confirmation** proceeding can be based upon factually intensive alter ego determinations by asserting that this Court supposedly decided this issue when it held that Prime Carbon was subject to personal jurisdiction for purposes of the **enforcement** claims asserted in the Enforcement Action.

However, this Court did not previously have cause to consider whether personal jurisdiction **in a separate confirmation action** against Prime Carbon might be based upon alter ego theories, because this Court concluded in the Enforcement Action that any confirmation claim against Prime Carbon, whether based on alter ego **or** successor theories, was factually intensive and therefore failed to state a claim for relief on the merits.[7]  (ECF #46, at 32-34).  To the contrary, this Court recognized that any confirmation action against SBT might have to be brought outside this District, consistent with Existing Defendants' arguments that SBT could not be subjected to personal jurisdiction here.  (EA ECF #46, at 36-37 (stating that "Plaintiffs here have not sought confirmation of the Award in this proceeding . . . presumably because of SBT's unavailability in this forum" and that "Plaintiffs' enforcement action may be permissible if the Award was confirmed in Switzerland or other court of competent jurisdiction")).

Plaintiffs' position that this Court may assert personal jurisdiction over SBT (or, indeed, Prime Carbon)[8] for purposes of this confirmation claim is contrary to the thoughtful, extensive decision in *Frontenac Int'l, S.A., v. Global Mrkt'g Sys.*, Civ. A. No. RDB-13-00122, 2013 WL 2896896, at *5-6 (D. Md. June 11, 2013), which expressly considered and rejected the propriety of alter ego jurisdictional determinations in confirmation proceedings in light of the rule of *Orion Shipping & Trading Co. v. Eastern States Petroleum Co.*, 312 F.2d 299 (2d Cir. 1963).

In opposition, Plaintiffs point only to *Glencore AG v. Bharat Alum. Co.*, No. 10 Civ. 5251(SAS), 2010 WL 4323264 (S.D.N.Y. Nov. 1, 2010).  *Glencore*, however, simply did not

---

[7] Alter ego jurisdiction would only have been at issue had this Court determined—which it did not--that the successor analysis was not factually intensive, permitting Plaintiffs to state a confirmation claim on the merits, but requiring them to rely on alter ego personal jurisdiction.

[8] Contrary to Plaintiffs' assertion, Defendants have clearly asserted this Court's lack of personal jurisdiction over Prime Carbon.  (ECF #28, at 8-9 n.8; ECF #27, at 1).

consider whether *Orion* precludes alter ego jurisdictional determinations in a confirmation action, which in no way reflects poorly on the court, given that the parties did not raise the issue.[9]  The court methodically decided every issue raised by the parties and concluded that, despite issues of fact as to whether the award respondent was an alter ego of the enforcement defendants, the respondent was **not** subject to personal jurisdiction where neither it nor the alleged alter egos were subject to personal jurisdiction.  *See id.* at 6-9.  No persuasive weight attaches, however, to *Glencore*'s failure to consider issues not raised by the parties that would only have provided additional grounds for its no personal jurisdiction holding.[10]

### B.  There Is No Alter Ego Relationship upon Which to Base Jurisdiction.

Plaintiffs cite no support for their assertion that in determining whether this Court has jurisdiction over **SBT**, the Court must evaluate only the alleged alter egos' forum contacts, not SBT's.  It is hornbook law that jurisdictional analysis focuses on contacts between the forum and the party over whom the Court seeks to assert jurisdiction.  *See, e.g., Daimler AG v. Bauman*, 134 S. Ct. 746, 754-762 (Jan. 14, 2014).  It is SBT that must have a continuing relationship with this District at the time the Complaint is filed for this Court to assert personal jurisdiction over it.

Plaintiffs' assertion that this Court may consider a "multi-year period prior to the filing of the complaint" simply ignores law cited by Defendants holding that where an intervening event precludes the inference that prior contacts continue to exist at the time of filing, it is error to consider such prior contacts.  (ECF #28, at 13-14 (citing cases)).  Plaintiffs fail to appreciate that

---

[9] Neither did they raise the propriety of **subsidiary** jurisdiction based on a **parental** contacts.

[10] Moreover, Plaintiffs mischaracterize *Glencore*'s statement that jurisdictional alter ego analysis "requires application of a less stringent **standard**," as a holding that a jurisdictional alter ego determination "requires a less fact-intensive analysis," (ECF #41, at 10).  *Glencore* itself makes clear that jurisdictional alter ego analysis "requires 'a fact-specific inquiry into the realities of the actual relationship between the parent and subsidiary.'"  *Glencore*, 2010 WL 4323264, at *5.

9

the SBT bankruptcy is just such an intervening event that conclusively ended any prior alleged alter ego relationship and thus ended SBT's alleged forum contacts **four years** before the Complaint was filed, and **more than a year before the confirmation claim even arose**.

Moreover, Plaintiffs are incorrect in arguing, based upon *Glencore*, that New York law, rather than Swiss law, applies to piercing the veil of a Swiss corporation.  First, *Glencore* applied forum law in the absence of any argument by any party to apply foreign law.  *Glencore*, 2010 WL 4323264, at *5. Where the applicability of foreign law is raised, as here, it is clear that veil-piercing determinations are governed by the law of the place of incorporation, as fully explained in Existing Defendants' Enforcement Reply.  Second, Plaintiffs simply ignore the international comity concerns that constrain a court from exercising jurisdiction over foreign corporations based upon expansive domestic jurisdictional law.  *See Daimler AG*, 134 S. Ct. at 763.

However, the conflicts of law issue is a red herring, where under both New York law and Swiss law, control is *sine qua non* of an alter ego relationship.  (EA ECF #68-1, Third Supp. Ex. 2 ¶¶ 2.1 & 2.2; EA ECF #68 ¶ 11).  Tellingly, Plaintiffs say not one word as to how control supposedly continued after initiation of the SBT bankruptcy or demonstrating that control is not required for alter ego veil-piercing under the law of either Switzerland or New York.

## VI. Plaintiffs Cannot Amend Their Complaint by Declaration.

To the extent that the Complaint filed in this action is not the Complaint that Plaintiffs intended to file, their remedy is to file an amended complaint.  They cannot, however, amend their pleadings by means of attachments to declarations.  Regardless, any amendment is futile, given that the proposed amended complaint that Plaintiffs attach to the Declaration of David Barack does not cure the fatal deficiencies that compel the dismissal of the operative Complaint.

|  |  |
|---|---|
| Admitted Pro Hac Vice: | Respectfully submitted, |
| Kevin P. Lucas, Esquire<br>Bruce A. Americus, Esquire<br>Alexandra P. West, Esquire<br>Buchanan Ingersoll & Rooney, PC<br>One Oxford Centre, 20th Floor<br>301 Grant Street<br>Pittsburgh, PA  15219<br>T 412 562-8800<br>F 412 562-1041 | /s/ Stuart P. Slotnick<br>Stuart P. Slotnick, Esquire<br>Buchanan Ingersoll & Rooney, PC<br>1290 Avenue of the Americas, 30th Floor<br>New York, NY  10104-3001<br>T 212 440 4400<br>F 212 440 4401<br><br>For AMCI Holdings, Inc., American Metals & Coal International, Inc., K-M Investment Corporation, Prime Carbon GmbH, Primetrade, Inc., Hans Mende, and Fritz Kundrun |
| Dated:  October 6, 2014 | |