```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

CBF INDÚSTRIA DE GUSA S/A/, DA TERRA
SIDERÚRGICA LTDA, FERGUMAR - FERRO GUSA
DO MARANHÃO LTD, FERGUMINAS SIDERÚRGICA
LTDA, GUSA NORDESTE S/A, SIDEPAR -
SIDERÚRGICA DO PARÁ SA, and SIDERÚRGICA
UNIÃO S/A,

                    Plaintiffs,
                                                14 Civ. 3034 (RWS)
     - against -
                                                   OPINION

STEEL BASE TRADE AG, AMCI HOLDINGS,
INC., AMERICAN METALS & COAL
INTERNATIONAL, INC., K-M INVESTMENT
CORPORATION, PRIME CARBON GMBH,
PRIMETRADE, INC., HANS MENDE, and FRITZ
KUNDRUN,

                    Defendants.

-------------------------------------X
```

A P P E A R A N C E S:

    Attorneys for the Plaintiffs

    NORTON ROSE FULBRIGHT
    666 Fifth Avenue
    New York, NY 10103
    By:  David L. Barrack, Esq.
        James Nespole, Esq.
        Jami Mills Vibbert, Esq.
        David B. Schwartz, Esq.

    Attorneys for the Defendants

    BUCHANAN INGERSOLL & ROONEY, P.C.
    1290 Avenue of the Americas, 30th Floor
    New York, NY 10104

By:  Stuart P. Slotnick, Esq.

BUCHANAN INGERSOLL & ROONEY, P.C.
One Oxford Centre, 30th Floor
301 Grant Street
Pittsburg, PA 15219
By:  Kevin P. Lucas, Esq.
     Bruce A. Americus, Esq.
     Alexandra P. West, Esq.

By:  Stuart P. Slotnick, Esq.

BUCHANAN INGERSOLL & ROONEY, P.C.
One Oxford Centre, 30th Floor
301 Grant Street
Pittsburg, PA 15219
By:  Kevin P. Lucas, Esq.
     Bruce A. Americus, Esq.
     Alexandra P. West, Esq.

**Sweet, D.J.**

Defendants AMCI Holdings, Inc. ("AMCI Holdings"), American Metals & Coal International, Inc. ("American Metals"), K-M Investment Corporation ("K-M"), Prime Carbon GMBH ("Prime Carbon"), Primetrade, Inc. ("Primetrade") (collectively, the "Non-SBT Corporate Defendants"); Hans Mende ("Mende") and Fritz Kundrun ("Kundrun") (collectively, the "Individual Defendants"); and Steel Base Trade AG ("SBT" and collectively with the Non-SBT Corporate Defendants and Individual Defendants, "Defendants") have moved pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure as well as under the doctrines of <u>forum non conveniens</u> and international comity abstention to dismiss the Complaint of Plaintiffs CBF Indústria de Gusa S/A ("CBF"), Da Terra Siderúrgica Ltda, Fergumar - Ferro Gusa Do Maranhão Ltda, Ferguminas Siderúrgica Ltda, Gusa Nordeste S/A, Sidepar - Siderúrgica Do Pará S/A, and Siderúrgica União S/A (collectively, "Plaintiffs").

For the reasons set forth below, Defendants' motion to dismiss is granted.

**Prior Proceedings**

1

Plaintiffs initiated this action (the "Confirmation Action" or "CA") on April 29, 2014, following dismissal of Plaintiffs' complaint in a related action (the "Enforcement Action" or "EA") filed under 13 Civ. 2581. See CBF Industria de Gusa S/A v. AMCI Holdings, Inc., 14 F.Supp.3d 463 (S.D.N.Y. 2014). Plaintiffs have also initiated parallel confirmation proceedings in French and Swiss courts. See Pls.' Mem. in Supp't of Motion to Stay 2 filed Enforcement Action. This Confirmation Action complaint contains one claim, confirmation of Plaintiffs' Arbitral Award against SBT pursuant to 9 U.S.C. § 207. Compl. ¶¶ 135-42. The instant motion to dismiss was heard and marked fully submitted on October 8, 2014.

**Allegations of the Complaint**

The factual allegations contained in the Complaint, assumed true for the purposes of the instant motion, are largely identical to those in the EA action's amended complaint.[1] Cf. Amended Complaint in the Enforcement Action. Familiarity with those allegations is assumed.

---

[1] The sole divergence between the two complaints is that this Complaint adds substantive factual allegations regarding alter ego jurisdiction over SBT its corporate alter egos. See Compl. ¶¶ 26-36. These allegations, also presumed true for the purposes of the instant motion, are not germane to the discussion below.

2

**The Applicable Standards**

Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-08, empowers federal courts to confirm arbitral awards, such as this one, governed by the New York Convention. See Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 404 (2d Cir. 2009). When a party seeks confirmation of an arbitral award under the New York Convention, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207; see Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir. 2005). "Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." Id. at 90.

"Given the strong public policy in favor of international arbitration, review of arbitral awards under the New York Convention is 'very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" Encyclopaedia Universalis, 403 F.3d at 90 (quoting Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997) (additional internal

3

citations omitted)); accord Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) ("The court's function in confirming or vacating an arbitration award is severely limited.") (citation and alteration omitted). However, a petition to confirm an arbitral award is "treated as akin to a motion for summary judgment." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006).

A facially sufficient complaint may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. See Thomson v. Gaskill, 315 U.S. 442, 446 (1942) (citations omitted). The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. See Makarova, 201 F.3d at 113.

In addition, Rule 12(b)(2) requires that a court dismiss a claim if the court does not have personal jurisdiction over the defendant. See Fed. R. Civ. P. 12(b)(2). "To

4

establish personal jurisdiction, [a plaintiff] must show that [the defendant] has minimum contacts with the forum state and was properly served." Salmassi e. Kfr. v. Euro-America Container Line Ltd., 08 Civ. 4892, 2010 WL 2194827, at *4 (S.D.N.Y. June 1, 2010) (citations omitted). Once a defendant has raised a jurisdictional defense on a Rule 12(b) motion to dismiss, the plaintiff bears the burden of establishing that the court has jurisdiction over a defendant. DiStefano v. Carozzi N. Am. Inc., 286 F.3d 81, 84 (2d Cir. 2001).

"[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted). As such, a court may rely on evidence outside of the pleadings, including declarations submitted in support of the motion and the records attached to these declarations. See Makarova, 201 F.3d at 113 ("In resolving a motion to dismiss . . . under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

Rule 12(b)(3) provides that a defendant may move to dismiss a complaint on the grounds of improper venue. See Fed. R. Civ. P. 12(b)(3). "[T]he burden of showing that venue in the

5

forum district is proper falls on the plaintiff." E.P.A ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). However, absent an evidentiary hearing, "'the plaintiff need only make a prima facie showing of [venue].'" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005) (quoting CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**SBT Lacks Capacity to Be Sued**

Defendants contend, and Plaintiffs do not appear to controvert, that SBT lacks capacity to be sued under Rule 17 of the Federal Rules of Civil Procedure. See Fed. R. Civ. Pro.

6

17(b); Defs.' Mem. in Supp't 6-7; Pls.' Mem. in Opp'n 14-20 (attacking Defendants' capacity argument on the basis of judicial estoppel rather than on the basis of federal or Swiss law).

Rule 17(b) directs courts to examine the law under which the corporation was organized in order to determine a corporation's capacity to sue and be sued. Fed. R. Civ. Pro. 17(b)(2); see also Marsh v. Rosenbloom, 499 F.3d 165, 176-77 (2d Cir. 2007); Mock v. Spivey Co., 167 A.D.2d 230, 230-31 (N.Y. App. Div. 1990) (applying Pennsylvania law as to the capacity of a dissolved Pennsylvania corporation to be sued). In SBT's case, Swiss law determines SBT's capacity. See Compl. ¶ 16. Under Swiss law, a corporation, once removed from the Swiss Commercial Register, loses its capacity to be sued. See Forstmoser et al., Swiss Company Law, § 56, ¶ 153 (1996) (attached as Ex. 1 to Third Supplemental Declaration of Andreas Rüd). SBT was removed from the Commercial Register on September 30, 2013. See Compl. ¶ 16; see also Pls.' Mem. in Opp'n 17. Consequently, SBT lacks capacity to be sued.

7

**Defendants Are Not Judicially Estopped From Asserting SBT's Lack of Capacity**

Plaintiffs contend that representations made in support of Defendants' forum non conveniens arguments in the Enforcement Action precludes them from raising SBT's incapacity as a defense here. Pls.' Mem. in Opp'n 14-20. According to Plaintiffs, "Defendants asserted repeatedly that Switzerland and France provided adequate forums for Plaintiffs' claims and, indeed, were the proper forums for this action" in their memorandum in support of their motion to dismiss the Enforcement Action. Id. at 14-15 (citing EA Defs.' Mem. in Supp't 39-47). As a result, Plaintiffs seek to have Defendants judicially estopped from asserting that "SBT lacks the capacity to be sued in any forum." Pls.' Mem. in Opp'n 15.

Under Second Circuit precedent, a party may be judicially estopped from asserting a position if: "(1) the party took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." Holtz v. Rockefeller & Co., 258 F.3d 62, 80 (2d Cir. 2001) (internal quotations, citations and ellipses omitted); see also Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6-8 (2d Cir.

8

1999). "The purposes of the doctrine are to preserve the sanctity of the oath and to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." Id. (quoting Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997) (internal quotations omitted)).

Judicial estoppel does not apply to Defendants' assertions regarding SBT's capacity. Even assuming Defendants' representations in the EA can be construed as stating that SBT could be sued in Switzerland, the EA complaint was not dismissed on the basis of those representations. Indeed, the EA Opinion stated that "dismissal obviates the need to determine . . . forum non conveniens and international comity issues," and therefore did not rely on Defendants' arguments pertaining to forum non conveniens. See CBF Industria de Gusa S/A v. AMCI Holdings, Inc., 14 F.Supp.3d at 480. The statement in the EA Opinion that "Plaintiffs' enforcement action may be permissible if the Award was confirmed in Switzerland or other court of competent jurisdiction" was not a finding that SBT can be sued elsewhere. Id. at 479. Rather, it underscored the fact that no determination as to Plaintiffs' ability to confirm the award in Switzerland or another court was made.

Therefore, Defendants are not judicially estopped from

9

making the SBT incapacity argument.

## **Defendants Are Not Judicially and Equitably Estopped from Opposing Confirmation**

Plaintiffs further contend that Defendants should be estopped from opposing confirmation because they "made numerous misrepresentations regarding SBT's commitment to its obligations and wiliness to participate in the arbitration" upon which Plaintiffs relied to their detriment. Pls.' Mem. in Opp'n 21-23. Plaintiffs further contend that Defendants looted SBT by transferring its assets to Prime Carbon in December 2009, taking advantage of an extension of time granted them by the Arbitral Tribunal to respond to Plaintiff's complaint. Id. at 21, 23. Plaintiffs contend that Defendants misrepresented that SBT is not evading its obligations and had not decided whether to dissolve and liquidate. Id. at 22-23. Defendants purportedly waited until April 2010, after the asset transfer from SBT to Prime Carbon, to place SBT into bankruptcy and then oppose the arbitration. Id. at 22.

Judicial estoppel, as discussed above, requires a tribunal's reliance on a party's prior inconsistent position. See Holtz, 258 F.3d at 80. Equitable estoppel can be invoked to

10

stop a party from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to its detriment. Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706, 725 (2d Cir. 2001). Neither variety of estoppel is applicable here.

With respect to judicial estoppel, Plaintiffs apparently contend that Defendants cannot now raise bankruptcy as a defense to confirmation since they voluntarily placed SBT into bankruptcy. Pls.' Mem. in Opp'n 23. Two considerations refute Plaintiffs' contention. First, placing SBT into bankruptcy is not inconsistent with Defendants' current position that the SBT lacks capacity to be sued. To be sure, bankruptcy presents a confirmation challenge for Plaintiffs, but Plaintiffs did not plead that Defendants represented that placing SBT into bankruptcy would enable Plaintiffs to collect on the Award. Second, even assuming these to be inconsistent positions cognizable under this doctrine, Plaintiffs have not pled the prior tribunal's reliance on Defendants' decision to place SBT into bankruptcy. The Arbitral Tribunal rendered its Award aware of both STB's bankruptcy and Plaintiffs' allegations regarding SBT's looting and Defendants' misrepresentations. See Award ¶¶

26-30, 35. The Award was made against, rather than in favor, of Defendants and the Tribunal did not credit Plaintiffs' fraud allegations. Id. ¶ 47. That judgment cannot be second-guessed by this Court sitting, as it does, in secondary jurisdiction. See CBF Industria, 14 F.Supp.3d at 479. Because Plaintiffs have not pled reliance on the part of the Arbitral Tribunal, their judicial estoppel argument cannot stand.

Plaintiffs' equitable estoppel argument likewise fails. Plaintiffs' harm is SBT's placement into bankruptcy in April 2010, and the resulting difficulties associated with confirming the Award. See Pls.' Mem. in Opp'n 21-22. Defendants' allegedly misrepresented that they were committed to their obligations, willing to participate in arbitration, and had not decided, as of December 2009, to place SBT into bankruptcy. Compl. ¶¶ 57-61. Plaintiffs have not pled that the misrepresentations rendered confirmation impossible; indeed, Defendants could still have placed SBT into bankruptcy absent these misrepresentations as discussed below.

Moreover, Plaintiffs have not pled that Defendants' misrepresentations rendered confirmation impossible: that is, they have not pled that Plaintiffs detrimentally relied upon Defendants' purported misrepresentations. Plaintiffs

12

discovered the purported falsity of Defendants representations before the Award was filed since their prior allegations of fraud and looting are discussed in the Award itself. Award ¶ 26. According to the Plaintiffs' expert, SBT could have been sued between the November 9, 2011 ICC Award date and the conclusion of SBT's bankruptcy in January 27, 2012, or also possibly during the almost two-year period until SBT's September 30, 2013 Commercial Register deletion. See Jörg Aff. dated Sept. 13, 2013 and filed in the EA Action; see also Pls.' Mem. in Opp'n to Motion to Dismiss Amended Complaint in EA Action 22. If this period was insufficient, Plaintiffs may have also had procedural tools available, including timely appeal of the bankruptcy closing and seeking to have it reopened. See Fourth Supp. Rüd Decl. ¶ 3. Equitable estoppel is inappropriate under these circumstances.

**Remaining Personal Jurisdiction, Service of Process, International Comity and Forum Non Conveniens Arguments Are Moot**

As concluded above, Plaintiffs' sole claim in this case is dismissed as SBT lacks capacity to be sued. That dismissal obviates the need to determine the remaining personal jurisdiction, service of process, international comity and forum non conveiens arguments put forth by Defendants.

**Conclusion**

Based on the conclusions set forth above, the Defendants' motion to dismiss the Complaint is granted and the Complaint is dismissed.

It is so ordered.

**New York, NY**
**March /7/ 2015**

ROBERT W. SWEET
U.S.D.J.

14